```
           IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF OKLAHOMA

ANGELA D. DAVIS,                     )
                                     )
              Plaintiff,             )
                                     )
                                     )  Case No. CIV-18-062-RAW-KEW
                                     )
COMMISSIONER OF SOCIAL               )
SECURITY ADMINISTRATION,             )
                                     )
              Defendant.             )
```

## REPORT AND RECOMMENDATION

Plaintiff Angela D. Davis (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 47 years old at the time of the ALJ's decision. Claimant completed her GED. She has worked in the past as a waitress, certified nurse aide, and hospital housekeeper. Claimant alleges an inability to work beginning August 1, 2012, due to limitations resulting from bilateral carpal tunnel syndrome, right elbow surgery, obesity, depression, anxiety, and fibromyalgia-like diffuse pain syndrome.

## Procedural History

On August 30, 2012, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and for supplemental security income pursuant to Title XVI (42 U.S.C. §

1381, *et seq.*) of the Social Security Act.  Claimant's applications were denied initially and upon reconsideration.  On March 18, 2014, Administrative Law Judge("ALJ") Richard Kallsnick conducted an administrative hearing in Tulsa, Oklahoma.  On April 29, 2014, the ALJ entered an unfavorable decision.  Claimant requested review by the Appeals Council, and on March 15, 2016, the Appeals Council remanded the case to an ALJ.

On remand, ALJ John Belcher conducted a second administrative hearing by video on November 8, 2016.  Claimant appeared in Muskogee, Oklahoma, and the ALJ presided from Tulsa, Oklahoma.  ALJ Belcher issued an unfavorable decision on January 13, 2017.  On December 26, 2017, the Appeals Council denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) finding she retains the RFC to perform light work, and (2) reaching conclusions

4

at steps two and four of the evaluation process that are not supported by substantial evidence.

## RFC Assessment

In his decision, the ALJ found Claimant suffered from severe impairments from surgery for bilateral carpal tunnel syndrome, surgery on her right elbow, obesity, depression, and anxiety. (Tr. 22). He determined Claimant could perform light work with additional limitations. In so doing, he found Claimant could lift/carry 15 pounds occasionally, ten pounds frequently, with pushing/pulling consistent with lifting/carrying limits. Claimant could stand/walk for two hours in an eight-hour workday and sit for six to eight hours in an eight-hour workday with normal breaks. She must change positions every hour for five minutes each hour. Claimant can occasionally climb ladders, ropes, and scaffolding, but she should avoid crawling. She can occasionally reach overhead with her right upper extremity, and she can frequently finger, handle, and feel bilaterally and use her feet for foot controls. Claimant can perform simple, routine, and some moderately complex tasks, allowing her to perform semi-skilled work. Contact with co-workers and supervisors should be superficial. (Tr. 24, 29).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative job of document specialist, which the ALJ found existed in sufficient numbers in the national economy. (Tr. 30). As a result, the ALJ

concluded that Claimant was not under a disability from August 1, 2012, through the date of the decision. *Id*.

Claimant argues that although the ALJ initially determined she had the RFC to perform light work, he ultimately adopted an RFC which included limitations in standing/walking, lifting, and reaching that are more suggestive of sedentary work. Claimant contends that if her RFC is limited to sedentary, unskilled work, the limitations included by the ALJ in her RFC for occasional overhead reaching, frequent fingering, handling, and feeling bilaterally (because of her carpal tunnel and elbow surgeries), and combined standing/walking (because of her obesity) are significant and preclude her from performing the document specialist job offered by the VE as available work.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case

record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

The ALJ determined Claimant's ability to perform a full range of light work was impeded by additional limitations, including that Claimant could (1) stand and/or walk for a total of at least two hours in an eight-hour workday, (2) occasionally reach overhead with her right upper extremity, and (3) frequently finger, handle, and feel bilaterally. (Tr. 24, 29). Although the ALJ specifically considered all the assessments in the record, with regard to Claimant's physical limitations, he relied most heavily on the medical source statement from Dr. Tracy Baker, Claimant's treating physician, and on the testimony of Dr. Karl Lee Manders, an impartial medical expert, who testified during Claimant's hearing.

On April 2, 2013, Dr. Baker opined Claimant could stand and/or walk for a total of at least two hours in an eight-hour workday and could use her hands frequently for reaching, handling, fingering, and feeling. (Tr. 28, 485-86).[2] Dr. Manders testified

---

[2] The record reflects that the limitation for reaching included by the ALJ in the RFC was more restrictive than the limitation on reaching imposed by Claimant's treating physician, Dr. Baker. *See generally*, *Chapo*, 682 F.3d at 1288("[I]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit

7

that Claimant could stand and/or walk for a total of at least two hours in an eight-hour workday, could only occasionally reach overhead because of her elbow impairment, but she could frequently finger, handle, and feel bilaterally (Tr. 756-58).[3]

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. *Hargis*, 945 F.2d at 1489.

The hypothetical question the ALJ posed to the VE included all the limitations ultimately adopted by the ALJ in the RFC. (Tr. 24, 779). The VE testified that with such limitations, Claimant

---

reversible error by electing to temper its extremes for the claimant's benefit.").

[3] The ALJ states in the decision that Dr. Manders determined Claimant could reach, handle, finger, and feel only occasionally. (Tr. 28). However, the manipulative limitations imposed by Dr. Manders were correctly reflected by the ALJ in the RFC and in the limitations included in the hypothetical question he posed to the VE at the hearing. (Tr. 24, 756, 758, 779).

could perform the unskilled, sedentary job of document specialist. (Tr. 780). Claimant contends that when questioned further by her attorney regarding the limitations to Claimant's right arm, the VE testified the document specialist job was unavailable. However, the transcript reveals the question to the VE was not limited to only occasional overhead reaching with the right arm. The attorney asked, "If [Claimant] was limited to just occasional reaching with that right upper extremity in all directions, would that affect that document specialist job?", to which the VE responded, "Yes, it requires frequent reaching." (Tr. 782).

The RFC adopted by the ALJ did not limit Claimant to occasional reaching with the right upper extremity "in all directions," but it included a limitation for occasional reaching overhead with the right upper extremity. The hypothetical question the ALJ posed to the VE included only a limitation for occasional overhead reaching with the right upper extremity. It did not include a limitation for occasional reaching "in all directions" with the right upper extremity. Moreover, the ALJ was not bound by the VE's response to a hypothetical if it contained impairments he did not accept as true. *Talley*, 908 F.2d at 588. In response to the ALJ's hypothetical question, the VE testified the document specialist job was available for Claimant. (Tr. 779-80).

The Court finds no error in the ALJ's RFC assessment. The RFC adopted by the ALJ was supported by substantial evidence and

9

those limitations found to exist by the ALJ were included in his hypothetical question to the VE. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

### Step Two and Four Analysis

Claimant contends the ALJ failed to consider her fibromyalgia pain syndrome as a severe impairment at step two and further failed to consider it at step four. She contends that the prior ALJ's decision found her fibromyalgia pain syndrome was a severe impairment, and in the remand from the Appeals Council, part of its directive was for the ALJ to consider the listings with regard to Claimant's fibromyalgia pain syndrome.[4] Claimant asserts the ALJ fails to make any mention of her fibromyalgia pain syndrome at steps two and four of the analysis. *Claimant's Brief*, pp. 5-6.

The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See, e.g., Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful

---

[4] The decision of the prior ALJ included "fibromyalgia-like diffuse pain syndrome" as a severe impairment. (Tr. 40).

10

employment.); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007) (the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 221 F.3d 1352 (10th Cir. 2000) (unpublished), 2000 WL 1028250, at *1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). The fact Claimant was diagnosed with a fibromyalgia-like pain syndrome does not translate into a medically determinable impairment.

To the extent Claimant contends her fibromyalgia pain syndrome should have been included as a severe impairment at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems

11

'severe' and those 'not severe.'" *Id.*, quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291–292 (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007), quoting *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). In this case, the ALJ did not end the sequential evaluation at step two by finding Claimant had no severe impairments. Since the ALJ did not deny benefits at step two based upon the lack of any severe impairments, his failure to include Claimant's fibromyalgia-like

12

diffuse pain syndrome as a severe impairment does not constitute reversible error.[5]

Further, although the ALJ did not find Claimant's fibromyalgia-like pain syndrome was a severe impairment at step two, he did consider it in his decision and in formulating the RFC. In the summary of the evidence, the ALJ discussed Claimant's visit with Dr. Ashok Kache, M.D., on September 17, 2012, wherein Dr. Kache noted that Claimant "demonstrated lumbar flexion at about 75° and shoulder abduction and flexion to 130°." (Tr. 26, 337).

---

[5] Claimant also argues that in its order remanding the case to an ALJ, the Appeals Council specifically requested the ALJ resolve several issues, including consideration of whether claimant's physical impairments and mental impairments or combination of impairments meet or medically equal the severity of a listed impairment, *i.e.*, the ALJ should have considered Claimant's fibromyalgia-like diffuse pain syndrome which the prior ALJ determined was a severe impairment at step three. However, Claimant's argument is unpersuasive. Although the Appeals Council noted that the prior decision considered listings applicable to Claimant's mental impairments, but it did not address listings related to Claimant's severe physical impairments (Tr. 50), it in no way precluded the ALJ from performing his own review of the record. On remand, the ALJ did not determine Claimant's fibromyalgia-like diffuse pain syndrome was a severe impairment, and he was not required to consider it at step three when he applied the listings. *See Pritchett v. Astrue*, 220 Fed. Appx. 790, 792 (10th Cir. 2007) ("Because plaintiff's pain disorder was not a severe impairment, the ALJ was not required to consider it at step three when he applied the listings."), citing 20 C.F.R. § 404.1525(a) (noting that listings describe only severe impairments).

In any event, the ALJ considered Claimant's physical and mental impairments, including Listings 1.02 (Major dysfunction of a joint(s) (due to any cause), 11.14 (Peripheral neuropathy), 12.04 (Affective disorder), and 12.06 (Anxiety-related disorder). He determined that "the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination. (Tr. 23).

The ALJ also referenced "tender points in the upper trapezius muscles, cervical paraspinals, shoulders, elbows, hips, low back, and knees. No focal motor or sensory deficits were apparent in her arms or legs." *Id*. Dr. Kache concluded that Claimant suffered from a "diffuse widespread pain syndrome, fibromyalgia like" and prescribed her pain medication. (Tr. 337). At an appointment with Dr. Kache in November of 2012, he noted Claimant's condition was responding well to medication. (Tr. 449).

As discussed above, the ALJ also considered the limitations on the physical medical source statement completed by Dr. Baker, Claimant's treating physician, on April 2, 2013, noting that "Dr. Baker's denial that Ms. Davis needed to alternate between standing and si[t]ting undermined the claimant's allegation of back and neck pain. Even with that pain, Dr. Baker wrote Ms. Davis could occasionally climb stairs and ladders, bend forward at the waist, and kneel. She could frequently crouch." (Tr. 26, 27).

The ALJ further discussed Claimant's fibromyalgia-like pain syndrome in his questioning of the impartial medical expert, Dr. Manders. As noted by the ALJ in his decision, Dr. Manders concluded that Claimant "has fibromyalgia, but does not have enough objective findings to give a definitive fibromyalgia diagnosis. Dr. Manders does not doubt the claimant experiences pain; however, he believes her pain is more from a psychological point than from fibromyalgia and [is] hard to measure." (Tr. 27, 752-54).

14

The ALJ's decision demonstrates that he did not simply disregard Claimant's fibromyalgia-like pain syndrome when assessing her RFC at steps four and five. The record indicates that the ALJ considered the effects of both severe and non-severe impairments when assessing Claimant's RFC, *see* 20 C.F.R. § 404.1545(a)(2), and as discussed herein, substantial evidence supports the ALJ's RFC assessment.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 31st day of July, 2019.

Kimberly E. West
United States Magistrate Judge
Eastern District of Oklahoma